**Mrs. Amanda Stewart RABB, Administratrix of the Estate of Johnny Rabb, Plaintiff-Appellant,**

v.

**The CANAL BARGE COMPANY, Defendant-Appellee.**

No. 28866.

United States Court of Appeals, Fifth Circuit.

June 18, 1970.

Norman L. Breland, Holleman & Necaise, Gulfport, Miss., Robert L. Netterville, Natchez, Miss., for plaintiff-appellant.

George Morse, Gulfport, Miss., John Peters, Jr., Jones, Walker, Waechter, Poitevant, Carrere & Denegre, New Orleans, La., for defendant-appellee.

Before BELL, COLEMAN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

The issue before us is whether there is an evidentiary basis to sustain the jury's finding of no negligence or unseaworthiness in this action against Canal Barge Company, Inc., growing out of the unexplained drowning of Johnny Rabb, a seaman. We find that there is and affirm.

Suit was brought under the Jones Act and the general maritime law by decedent's mother as the administratrix of his estate. Decedent is also survived by sisters and brothers. On the date in question, Johnny Rabb was employed by appellee Canal Barge Company as a deck hand aboard the tug, The M/V Eugenia P. Jones. The vessel at the time was pushing seven barges loaded with sulphur up the Ohio River. Rabb, who had been standing available for a fog watch, was last seen alive about midnight on August 2, 1968. Shortly before 3:25 a. m. he was ordered by the Pilot through the ship's intercom to proceed to the head of the tow as the vessel was beginning to come into fog. After a lapse of several minutes, the Pilot, having been unable to see a flashlight on the tow and having failed in his attempts to contact Rabb through the intercom, awakened the Captain who immediately ordered and shortly thereafter assisted with a general search of the tug and the barges in an attempt to find Rabb. A searchlight was turned on, and the vessel immediately following the tug and all towboats in the vicinity were notified to keep watch. Some time later, about daylight, a launch was put over the side to look for Rabb. The search, however, proved futile. Rabb's body, without a life jacket, was found the next day. By special verdict, the jury found for defendant.

The Court denied motions of both parties for a directed verdict and all other post-trial motions. Appellant's argument, basically a factual one, is addressed to the weight of the evidence and the Court's refusal to grant a peremptory instruction on both the negligence and unseaworthiness issues.

The standard for testing the sufficiency of the evidence in a Jones Act case is that expressed by the Supreme Court in Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), as follows:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

See also McBride v. Loffland Bros. Co. & Travelers Ins. Co., 5 Cir., 1970, 422 F.2d 363. *Cf.* Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365.

We must determine, therefore, whether there was a reasonable evidentiary basis upon which the jury could have found for appellee.

Appellant calls attention to the following omissions of the Captain of the vessel and appellee barge line: the alleged dilatory actions of the Captain by remaining in bed ten to fifteen minutes after having been told of Rabb's disappearance; his further delay in stopping the vessel and in putting a launch over to look for Rabb; failure to provide a back-up man to watch for men overboard in dense fog; and failure to sound distress signals. Appellant further alleges that the failure of appellee to provide adequate lighting and guard rails around the tug constituted actionable unseaworthiness of the vessel.

■ Having been given the proper instructions by the Court on negligence, unseaworthiness and proximate cause, it was the jury's function properly to assess that evidence against the following evidence favorable to appellee in determining whether there was liability: Deck

hands, venturing out on the barge, were required under all circumstances to wear life jackets and encouraged to use flashlights. There was no life jacket on decedent's body, and the Pilot looked for, but was unable to see, a flashlight on the head of the tow. Under these circumstances, the jury could have reasonably concluded that decedent's negligence was the sole proximate cause of his drowning. There were no eyewitnesses to the accident, thus necessitating the jury to draw on inferences. We may assume, therefore, that a certain amount of conjecture forms the basis of the verdict. This, however, does not detract from its validity. As said by the Supreme Court in a F.E.L.A. case, the counterpart of a Jones Act proceeding, "Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses *or proof of circumstances from which inferences can fairly be drawn.*" Schulz v. Pennsylvania Railroad Company, 350 U.S. 523, 527, 76 S.Ct. 608, 610, 100 L.Ed. 668 (1956). (Emphasis supplied.) See also Lavender v. Kurn, 327 U.S. at 653, 66 S.Ct. at 744.

■ Appellant stresses the alleged negligent failure of the tug's Captain to take proper and adequate measures when informed of Rabb's disappearance. We cannot say that the jury was unreasonable in refusing to find the Captain derelict or dilatory in his duty by allowing no more than fifteen minutes to lapse between being awakened and actively participating in the search. There was evidence that the vessel had already been stopped and that the Captain was aware of it, indicating that the necessary emergency measures were already in motion. Nevertheless, the Captain responded immediately by ordering a search; a searchlight was used to assist; all towboats in the vicinity were notified to keep watch; any search of the river and the banks by launch prior to daylight and a break in the fog would have been dangerous and useless. There was also evidence to refute appellant's contention that the absence of handrails and additional lights on the barges constituted unseaworthiness. Testimony showed the impracticality and danger of placing life lines around the perimeter of the barges; that all necessary navigational lights were in use and that any other lights aboard the barges would have created confusion and danger. There was also evidence that a one-man fog watch was normal; that there was a clear and unobstructed walkway for a deck hand to use in proceeding to the bow to serve as fog watch. Around the perimeter of the barges was a white glossy enamel stripe about eighteen inches wide painted there as a safety measure to warn a deck hand that he was approaching the edge of a barge.

■ Appellant nevertheless urges that the tug was unseaworthy as a matter of law and that the unexplained drowning of Rabb requires the application of the *res ipsa loquitur* doctrine. Resort to this doctrine, however, is not warranted in the absence of showing at least a malfunction, failure or misuse of the vessel, its appurtenances or gear, or some defect therein. Compare Vega v. The Malula, 5 Cir., 1961, 291 F.2d 415; Marshall v. Ove Skou Rederi A/S, 5 Cir., 1967, 378 F.2d 193. The facts of this case are vastly distinguishable from those of Gibbs v. Kiesel, 5 Cir., 1967, 382 F.2d 917, and authorities cited therein, relied on by appellant. In *Gibbs* the petitioner was struck from behind by doors which unaccountably fell from above. Inability of petitioner to pinpoint the cause which triggered the doors to fall did not preclude a finding of unseaworthiness. We expressed our approval of the application of the *res ipsa* doctrine to an action for unseaworthiness noting that "the logical inference is often that the gear or appurtenance would not have broken had it not been defective." 382 F.2d at 919. Here, however, there was no evidence of any untoward effect from which a possible unseaworthy "cause" could be argued.

The District Judge, in a very fair and comprehensive charge, instructed the jury that all of the alleged derelictions of appellee were matters to be decided by them in determining whether there was causal negligence or unseaworthiness. The Court properly instructed the jury on the "slight-negligence" test to be applied in determining liability under the Jones Act. See Webb v. Illinois Central Railroad Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957); Ferguson v. Moore McCormack Lines, 352 U.S. 521, 522, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957). The Court also informed the jury of the absolute duty of the shipowner in respect to seaworthiness. See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). The jury nevertheless found for appellee on both issues. We cannot say the verdict was without evidentiary basis.

Affirmed.