Dorothy Stevens CLINTON, Administratrix of the Estate of William Isaac Stevens, Deceased, Plaintiff-Appellant,

v.

INGRAM CORPORATION et al., Defendants-Appellees.

No. 71–1428.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1972.

Rehearing and Rehearing En Banc Denied April 6, 1972.

Godbold, Circuit Judge, dissented and filed opinion.

See also, D.C., 312 F.Supp. 539.

James L. Robertson, Roy D. Campbell, Jr., Greenville, Miss., for plaintiff-appellant.

Philip Mansour, Greenville, Miss., Nigel E. Rafferty, Walter W. Christy, New Orleans, La., Frank S. Thackston, Jr., Mansour & Kilpatrick, Greenville, Miss., for defendants-appellees, Ingram Corp. and others.

Before RIVES, BELL and GODBOLD, Circuit Judges.

RIVES, Circuit Judge:

Dorothy Stevens Clinton, as Administratrix of the Estate of her son William Isaac Stevens (hereafter Stevens), sued the Ingram Corporation and two other defendants to recover damages for the wrongful death of her son. Stevens was lost overboard from the M/V CAL WHITE, a ship owned by Ingram, or from its tow, on December 6, 1969, after an employment of only five days, that is, from December 1, 1969. The plaintiff sought to recover damages from Ingram both under the Jones Act[1] and on a claim of unseaworthiness under the General Maritime Law.[2] The case was tried to a jury. The judge required the jury to return a special verdict.[3]

1. 46 U.S.C. §§ 688, et seq.

2. As now permitted by Moragne v. States Marine Lines, Inc., et al., 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339.

3. "(a) *Special Verdicts.* The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be

Those questions which the jury answered are renumbered for convenience and together with the jury's answers are quoted in the margin.[4] Upon that special verdict, final judgment was entered in favor of all of the defendants. The plaintiff stipulated that the judgment was final and conclusive as to the defendants other than Ingram Corporation and filed a timely motion for judgment notwithstanding the verdict and/or for a new trial as against Ingram. The district court entered a memorandum opinion and an order denying the plaintiff's motion for judgment notwithstanding the verdict and/or for a new trial. This appeal is prosecuted from that order.

Stevens was, at the time of his death, twenty-two years of age. He had little formal education, having dropped out of school at the age of 18 before completing the eighth grade. Although he was the illegitimate son of Mrs. Clinton, the evidence is uncontroverted that he had a close relationship with his mother, his stepfather Mr. Clinton, and his young stepbrother Walter George Clinton. At times he had contributed small sums of money to the family till with which to pay bills, and on other occasions he had given small amounts for spending money to his mother and to Walter George. The depth of his pocket was severely limited, however, since during his life span Stevens held few jobs and each was of short duration. In fact, Stevens' income tax returns show that for the years 1965–68 he earned a meager total of $819.60.

made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

Rule 49(a), F.R.Civ.P.

4. "SPECIAL VERDICT OF
THE JURY

"We, the Jury in this action, find the following special verdict:

"[1] Was decedent's death proximately caused, in whole or in part, by negligence of Ingram Corporation, the crew members of the M/V CAL WHITE or the unseaworthiness of the M/V CAL WHITE and tow?

"ANSWER      No
          (Enter 'Yes' or 'No')

*******

"[2] What amount do you find represents the economic value of the life of William Isaac Stevens as of the date of his death?

"Enter the amount here:    $150.00

"[3] Did the Plaintiff suffer any pecuniary loss, including any reasonable expectation of pecuniary benefit in the future from William Isaac Stevens had he lived, by reason of the death of William Isaac Stevens?

"ANSWER      No
          (Enter 'Yes' or 'No')

"[4] Did William Isaac Stevens endure any conscious pain and suffering after he disappeared from the tow of the M/V CAL WHITE and prior to the time of his death?

"ANSWER      No
          (Enter 'Yes' or 'No')

*******

"[5] Did Walter George Clinton, brother of deceased, suffer any pecuniary loss, including any reasonable expectation of pecuniary benefit in the future from the continued life of William Isaac Stevens, had he lived, by reason of the death of William Isaac Stevens?

"ANSWER      No
          (Enter 'Yes' or 'No')

*******

"[6] Do you find from the preponderance of the evidence in this case that Walter George Clinton was a dependent of the deceased, William Isaac Stevens?

"Answer 'Yes' or 'No'      No

"[7] Did the omissions of the M/V Washington worsen the condition of William Isaac Stevens while he was in the Mississippi River?

"Answer 'Yes' or 'No'      No"

(R. pp. 251, 256 and 250).

Mr. Clinton testified that he provided Stevens with the major portion of his support and accordingly claimed a deduction on his income tax returns. Young Stevens had a criminal record of convictions on several minor charges and on some more serious charges, including auto theft, shoplifting and trespassing.

On the date of Stevens' death he had been working as a deckhand aboard the tug CAL WHITE but five days. His only prior experience with watergoing vessels had been as a deckhand on another ship for about five weeks during 1967. He was terminated from that job because he was clumsy. Nonetheless, there was no evidence that Stevens was performing poorly in his duties aboard the CAL WHITE. He may or may not have proved to be a successful seaman.

On the night of December 6, 1969, the tug CAL WHITE had in tow eleven barges and was proceeding north on the Mississippi River. The weather was bad, cold, dark and rainy, but no worse than was to be anticipated in early December. On that afternoon the CAL WHITE and the M/V ARTHUR J. DYER had arranged to exchange tows. Shortly after 6:00 P.M., in anticipation of the exchange of tows, three deckhands, including Stevens, under the direction of the mate were sent out onto the tow to take up the running lights. Shortly after the men began their work, Captain Couey received a communication concerning the ARTHUR J. DYER to the effect that the exchange of tows could not take place. Therefore, Captain Couey ordered the deckhands to reset the running lights.

Sometime thereafter Stevens fell overboard. The exact time of the accident is not known, nor is it known whether he fell from the tow or from the CAL WHITE herself. Two of the deckhands testified that they had last seen him, though at different spots, on one of the barges. Captain Couey, on the other hand, testified that as he was talking over the radio and looking out over the tow, he saw a man whom he later "determined" to be Stevens walking from the tow toward the CAL WHITE. Couey testified that Stevens was "fixing to step on the boat." At the coupling between the CAL WHITE and the barges there was not enough space for a person to fall through into the water.

Ingram had in effect on the CAL WHITE a safety rule that the men should never work alone on a tow at night. Exactly what that rule meant is unclear. Captain Couey testified that if one deckhand were on one end of the tow and another deckhand were on the opposite end (in this case a distance of about 750 feet), such would in his judgment satisfy the rule. In any case the other deckhands paid little attention to Stevens' whereabouts during the procedure involving the running lights. It should be noted that if Stevens arrived safely aboard the CAL WHITE before falling overboard (as Captain Couey's testimony would indicate) the safety rule regulating working together aboard *the tow* becomes irrelevant.

After Captain Couey heard someone "holler," he feared that one of the crew members might be missing. Accordingly, he immediately ordered a thorough search of the CAL WHITE and found that Stevens was not on board. Captain Couey then pulled the tow into the Arkansas side of the river, tied it off, and knocked loose the tug before he began moving downstream looking for Stevens. This procedure took approximately 30 to 40 minutes. Captain Couey testified that he chose not to launch the lifeboats on board the CAL WHITE because, in his opinion, to do so in the dark would have unnecessarily endangered the lives of the other crew members and the lifeboats would have been of no benefit in the rescue operations.

We are governed by different standards for testing the sufficiency of the evidence to sustain the jury's verdict under the two claims. In two opinions by Judge Ainsworth, Rabb v. Canal Barge Company, 5 Cir. 1970, 428 F.2d 201, 202, and McBride v. Loffland Bros. Co. & Travelers Ins. Co., 5 Cir. 1970, 422 F.2d 363, the standard for testing the sufficiency of the evidence in a Jones

Act case has been held to be that expressed by the Supreme Court in Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916. In cases other than those under the Federal Employers Liability Act or under the Jones Act, speaking for an en banc court Judge Ainsworth has expressed the standard for testing the sufficiency of the evidence in Boeing Company v. Shipman, 5 Cir. 1969, 411 F.2d 365, 374, 375.

■ As to the claim under the Jones Act, there was clearly sufficient evidence to support the jury's verdict on two separate grounds—first, the finding of no negligence and, second, the finding of no recoverable damages. It is arguable that the district court erred in some of its trial rulings or instructions to the jury concerning negligence under the Jones Act, but any such error would be harmless because of the jury's finding of no recoverable damages. Insofar as the Jones Act claim is concerned, the judgment for the defendant Ingram must be and is affirmed.

As to the claim based on unseaworthiness, the plaintiff presents even more cogent arguments attacking the district court's trial rulings and instructions. We are, however, compelled to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Rule 61, F.R.Civ.P. Unless we set aside one or more of the jury's answers to questions which we have numbered 2, 3, 4, 5 and 6 in footnote 2, *supra*, the plaintiff-appellant has not maintained her burden of showing that any damages are recoverable on the claim based on unseaworthiness.[5] The Supreme Court has held that, "He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted."[6] Palmer v. Hoffman, 2 Cir., 1943, 318 U.S. 109, 116, 63 S.Ct. 477, 482, 87 L.Ed. 645.

In the district court the plaintiff made no objection to any of the questions relating to damages or to the court's instructions with reference to them. Nor did the plaintiff request any different questions or instructions as to damages. The only one of those questions and answers which seems to us subject to serious attack is number 2:

"[2] What amount do you find represents the economic value of the life of William Isaac Stevens as of the date of his death?

"Enter the amount here: $150.00"

■ There is no evidence to support plaintiff's contention that this finding evinced passion or prejudice on the part of the jury. It is, however, subject to attack because the district judge failed to give the jury any instruction or direction to guide them in ascertaining the economic value of Stevens' life. On this subject the only instruction was:

"There is no mathematical formula by which values of this kind can be determined by you. There is no way that you can fix a precise or accurate or exact figure. The matter is left to your judgment and to your experience as you have gained in the ordinary walks of life. It is just a matter that is left to your sole and exclusive discretion."

(Supp. Record on Appeal 734, 735). Unlike questions of dependency and pecuniary loss, the concept of the economic value of a person's life is difficult to comprehend or to compute. Without a proper charge the jury was left completely to conjecture and speculation in arriving at its value.

In cases involving jury instructions this Court has recognized its power to note plain error in exceptional instances

5. The *Moragne* case, *supra*, 398 U.S. at 406–408, 90 S.Ct. 1772, 26 L.Ed.2d 339, left for future development the determination of the beneficiaries who are entitled to recover and of the measure of damages.

6. Lower court cases to the same effect are collected in U.S.C.A. Note 12 to Rule 61, F.R.Civ.P.

in the interest of justice even when the error is not called to its attention by counsel. De Fonce Construction Co. v. City of Miami, 5 Cir. 1958, 256 F.2d 425, 428; Fort Worth & Denver Ry. Co. v. Harris, 5 Cir. 1956, 230 F.2d 680, 682–683.

Here again, however, the plaintiff has failed to maintain her burden to show that the interest of justice requires that owing to the absence of jury instructions this Court should overturn the jury finding as to the economic value of Stevens' life. The plaintiff presents no reason for holding that the economic value of a man's life is the proper measure of damages in plaintiff's claim based on unseaworthiness. Clearly, this is not a case in which the plain error rule should be invoked in the interest of justice.

In short, the jury's answers to questions which we have numbered 2, 3, 4, 5 and 6, in footnote 2, *supra,* are not successfully attacked, and those answers establish that there are no recoverable damages in this case either under the Jones Act claim or under the claim based on unseaworthiness.

The judgment is therefore

Affirmed.

GODBOLD, Circuit Judge (dissenting):

With deference to my colleagues, I dissent. The majority opinion recognizes that there are cogent arguments that the District Court may have erred in trial rulings and instructions on unseaworthiness. But it pretermits consideration of those arguments on the premise that no substantial rights of the parties were affected, a conclusion which I am unable to understand.

In the majority's analysis leading to the conclusion that no substantial rights of the plaintiff were affected, the key step is that such conclusion is required by the jury's answers [renumbered] 2 through 6. The answers are said to have that commanding effect because, as the opinion states in its last sentence, "an-swers [2 through 6] establish that there are no recoverable damages in this case. . . . under the claim based on unseaworthiness." Earlier the opinion had said, "Unless we set aside one or more of the jury's answers to questions which we have numbered 2, 3, 4, 5 and 6 in footnote 2, *supra,* the plaintiff-appellant has not maintained her burden of showing that any damages are recoverable on the claim based on unseaworthiness."

Answer 2 has not been set aside. In fact, the majority *decline* to set it aside (at the behest of the plaintiff, because plaintiff did not object to the interrogatory at trial and the instructions concerning the interrogatory were held not to be plain error). Answer 2 remains in the case as an assessment by the jury of *damages under some standard.* As Judge Rives notes in footnote 5, Moragne v. States Marine Lines, Inc., et al., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), left for future decisions the development of a standard for damages for wrongful death resulting from unseaworthiness. Unless and until it is decided that the standard of damages which the jury in this case *did employ*—the economic value of a decedent's life—is *not* the correct measure of damages for wrongful death resulting from unseaworthiness, it is impossible to pretermit consideration of allegedly erroneous rulings and charges relating to unseaworthiness on the ground that plaintiff has failed to show that she was damaged.

The fact that the amount of damages was found to be $150 is irrelevant. The principle would be the same if it were $150,000. The majority imply that the measure given to the jury, the economic value of decedent's life, is not the correct standard for wrongful death resulting from unseaworthiness, but they do not so hold. They state that for want of instructions the jury was left to speculate, yet they decline to set aside the finding of $150 in damages. Having refused to set it aside, they not only decline to give any effect to it but affirmatively use it as a sword to destroy the plaintiff's right to review.

This enigma is not dissipated by application of the rule that one who seeks to have a judgment set aside because of an erroneous ruling must show that prejudice resulted. The appellant is entitled to the benefit of the jury finding on damages until it is found to be erroneous. It has not been found erroneous. She cannot be deprived of the benefit of it on the basis that, while not erroneous, she hasn't convinced the court that it was correct.

Nor is the problem solved by the fact that the District Judge disregarded answer 2 in entering judgment for the defendant. So far as we know he disregarded it because answer 1 excluded death proximately resulting from unseaworthiness. But it is possible that answer 1 was induced by erroneous rulings and instructions on unseaworthiness, and the answer might be different when correctly submitted.

In an appeal the appellate court may conclude that the wrong standard of damages was employed at trial, and it may, by examining the record under the correct standard, conclude as a matter of law that plaintiff suffered no recoverable damages. But this is wholly different from saying, as my brother judges do, that a plaintiff with a jury finding in her favor has the burden of convincing the court that the standard under which it was rendered, although not found to be erroneous, is a correct standard, and, having judicially created such a burden, deny review of trial errors on the ground plaintiff has failed to meet it. The error in placing such a burden on a plaintiff is especially apparent in this instance where plaintiff is faulted for having failed to convince this court that what the jury did was done under a "correct" standard, which at this juncture is unknown, not articulated in any prior case or in this case either.

In its present posture, this case is a poor vehicle with which to begin at the appellate level the case by case promulgation of a standard of damages for a new cause of action, as directed in

Moragne. But I do not understand why this should cause the plaintiff to be denied appellate review of other issues. We should review the instructions and rulings on unseaworthiness, and if there was error the case should be remanded for retrial on the issue of wrongful death resulting from unseaworthiness. The promulgation of a correct measure of damages for that cause of action has to commence in some courtroom somewhere. It may as well begin in the District Court in this case.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

GODBOLD, Circuit Judge, dissents and would grant rehearing.