466 F.2d 578
 Evelyn WEEKS, surviving spouse of Norman Lee Weeks, Sr.,
Deceased, Plaintiff-Appellant,
v.
ALONZO COTHRON, INC., et al., Defendants-Third Party
Plaintiffs-Appellees,
v.
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY and Matson
Surety, Inc., Third Party Defendants.
 No. 71-2661.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 15, 1972.
 
 Oliver Wiley Folmar, Vacation Village, Fla., Oliver Brantley, Troy, Ala., for plaintiff-appellant.
 Jeanne Heyward, Miami, Fla., for Alonzo Cothron, etc.
 Adams, George & Wood, Anthony Reinert, Miami, Fla., for American Mutual and Alonzo Cothron, etc.
 Schweitzer & Greenspahn, Melvyn G. Greenspahn, Miami, Fla., for Matson Surety.
 Before PHILLIPS,* THORNBERRY and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 Norman Lee Weeks, Sr. died while making underwater repairs to a barge owned by defendants. He was their employee. His surviving spouse, Evelyn Weeks, brought suit against the shipowner- employer for damages for his death. The suit was based on alleged negligence and unseaworthiness. The district court entered findings of fact and conclusions of law in favor of defendants. Finding the district court clearly erroneous on the issue of unseaworthiness, we reverse.
 
 
 2
 On August 17, 1968, Norman Weeks, fifty, an employee of defendant Alonzo Cothron, Inc., was repairing a barge owned by defendants. The barge was located in a canal in lower Matecumbe Key, within the navigable waters of Florida. The vessel was 105 feet long and 30 feet wide, with a freeboard of 4 to 6 feet. It cleared the silt bottom of the canal by 5 or 6 feet. It was tied up parallel to the bank of the canal approximately 3 or 4 feet from the water's edge. The canal was dead end, so the barge was not subject to any water currents. The water was described as "so clear that you could throw a dime in it and see it all the way to the bottom."
 
 
 3
 The barge had been used to haul heavy equipment onto beaches and the frequent beaching had forced the barge into rocks, punching holes in its bottom. On the day of Weeks' death, he and two other men, Robert Parnell and Manuel Arsua, who was foreman of the 3-man crew, were pumping water from the barge and applying sandwich-type patches to the leaks. These patches were constructed by attaching a piece of marine plywood directly under and directly over each hole with a bolt passing through a steel plate and the underside patch, then through the hole, and finally up through the topside patch and another steel plate. When the bolt was tightened, the leak would be sealed. The last leak to be patched was 7 to 9 feet in from the edge of the barge, and Weeks' job was to swim under the barge with the bolt and the 12 by 8 inch underside patch, find the leak, insert the patch and bolt, return under water to the edge of the barge, and surface. Arsua was in the barge's hold to receive the bolt and, with Parnell's assistance, was to apply the topside patch and secure it.
 
 
 4
 Refusing Parnell's offer of a lifeline, Weeks dove under the barge, wearing only a diving mask. Parnell stood at the edge of the barge as a lookout until Arsua, who was in the hold, called out that he had the patch. At that point Parnell left his lookout post and started down the ladder into the hold to assist Arsua, apparently assuming that Weeks would be on his way up to the surface. As he was descending the ladder, Arsua's six year old son, who had been playing around the barge, called out that Weeks had failed to come up. Both Arsua and Parnell dove under the barge but were unable to find Weeks. They then moved the barge out into the canal and fifteen to twenty minutes later found Weeks' body floating up against the bottom of the barge, about thirty feet from the patch.
 
 
 5
 We have previously reversed a dismissal of the first complaint in this case, which was based on a claim of negligence. We held that the Florida wrongful death statute covers claims of negligence occurring in the navigable waters of Florida, thus giving the district court admiralty jurisdiction. Weeks v. Alonzo Cothron, Inc., 426 F.2d 674 (5th Cir. 1970). Thereafter the United States Supreme Court decided Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), which held that an action lies under the general maritime law for death caused by unseaworthiness of a vessel on the navigable waters of Florida, without regard to the limited scope of the state wrongful death statute. The plaintiff then amended her complaint and sought relief both under the Florida statute on the theory of negligence and under the general maritime law on the theory of unseaworthiness, which contemplates liability without fault.
 
 
 6
 The trial court denied relief on both grounds. The court was not convinced that Weeks had died of drowning and found that the plaintiff had failed to prove that her husband's death was proximately caused by the circumstances of his employment or the alleged negligence or unseaworthiness. The court further decided that the vessel was not unseaworthy and that the defendant employer was not negligent.
 
 
 7
 We conclude that the vessel was unseaworthy and that the trial court was clearly erroneous in its finding of no proximate cause. Having decided this, we need not deal with the theory of negligence. The determination of damages on remand would be the same, regardless of the theory of recovery.
 
 I. Unseaworthiness
 
 8
 Mrs. Weeks argues that defendants' barge was unseaworthy and that this unseaworthiness caused her husband's death. The trial court found that the evidence did not support a finding of unseaworthiness. It found that (1) a safety line was available and offered to Weeks but was refused; (2) scuba equipment was not required because the law does not impose upon a vessel owner the duty to furnish the highest degree of safety; (3) if Weeks had used the safety line offered to him, he could have been pulled out of the water when he failed to surface within a matter of minutes; and (4) no other equipment was necessary and defendants' failure to have any other equipment did not constitute unseaworthiness. We think the district court misperceived the obligation of defendant to provide safe working conditions for Weeks.
 
 
 9
 Under the landmark case of Moragne v. States Marine Lines, Inc., supra, an action lies under the general maritime law for death caused by the unseaworthiness of a vessel in navigable waters. The duty to furnish a seaworthy vessel, i.e., a vessel and appurtenances reasonably fit for their intended use, is absolute, Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), and it is a kind of liability without fault that may be incurred without negligence. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).
 
 
 10
 At the outset, we acknowledge that the doctrine of seaworthiness does not require defendants' barge to be equipped with the latest developments in maritime safety. In Mitchell v. Trawler Racer, Inc., supra, the Supreme Court stated that an owner is not
 
 
 11
 "obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." 362 U.S. at 550, 80 S.Ct. at 933.
 
 
 12
 It is also true that unseaworthiness does not extend to the negligent use of seaworthy appliances. See, e.g., Little v. Green, 428 F.2d 1061 (5th Cir. 1970). See also 2 Norris, The Law of Seamen Sec. 618 (1970).
 
 
 13
 We rest our finding of unseaworthiness on defendants' complete failure to require the use of any safety procedure or equipment which would have enabled the crew to know immediately that Weeks had met with trouble and to locate and rescue him promptly from beneath the water. We hold defendants should have required their employees to follow some sort of safety procedure or use some kind of safety equipment. The evidence shows that Weeks was offered a lifeline but that he refused it. The lifeline was not required by defendants' rules and regulations. Even without a lifeline, however, some procedure could have been and should have been required to provide Weeks with a "connection" to his co-workers which would have enabled them to monitor his movements and to locate him quickly if trouble arose. The fifteen to twenty minute period which elapsed before Weeks' body was found attests to the need for a safety system of this kind. The theory of the "buddy system" of water safety is too well entrenched to be completely ignored. The defendants' practice of permitting a single diver to work alone under the barge without visual or physical connection to another member of the crew, and without any safety precautions, amounts to unseaworthiness.
 
 
 14
 Defendants seek to avoid a finding of unseaworthiness in two ways. First, they argue that previous Fifth Circuit cases compel a finding that Weeks' failure to use the proffered lifeline was the sole proximate cause of his death. Second, defendants argue that divers in the Florida Keys customarily dove without lifelines. We find the first argument unpersuasive and the second one not controlling.
 
 
 15
 As to the first argument, each case cited to us by defendant is distinguishable in at least one key respect. Our finding of unseaworthiness in the instant case rests upon defendant's failure to require the use of safety precautions. In contrast, none of the cited cases involves a failure of the shipowner to require safety procedures.
 
 
 16
 In Chaney v. City of Galveston, 368 F.2d 774 (5th Cir. 1966), the plaintiff was injured when he disregarded a "long observed . . . safe practice" and attempted to spot a grain spout over a ship by himself. The court correctly held that the sole proximate cause of plaintiff's injury was "his own heedlessness in not observing the safe practice of having spout tenders assist him and in attempting to spot the spout with only one tag line and permitting the second tag line to become secured to the ship." 368 F.2d at 776. In the instant case, Weeks' refusal of the lifeline was not in disregard of a long observed, safe practice. The practice was not to use the lifeline.
 
 
 17
 In Reed v. MV Foylebank, 415 F.2d 838 (5th Cir. 1969), the plaintiff departed from the "usual custom" of hooking crates on available wooden corners and instead used his hand hook on a steel band which broke, injuring plaintiff. The court held that the proximate cause of plaintiff's injury was his own negligence in hooking the steel strap in a departure from usual custom. Weeks followed the usual custom.
 
 
 18
 Similarly, in Boudreaux v. Sea Drilling Corp., 427 F.2d 1160 (5th Cir. 1970), plaintiff was injured when a wire rope on a crane broke. This court affirmed the district court's holding that plaintiff's injury was caused by his own negligence in choosing to use only a single line, not a double or triple line, "in violation of custom on the drilling platform and ordinary operating procedure. . . ." 427 F.2d at 1161. Unlike Boudreaux, Weeks did not ignore a customary operating procedure. Rather, it is the complete absence of any such customary adequate safety procedures for the divers which renders defendants' barge unseaworthy.
 
 
 19
 Rabb v. Canal Barge Co., 428 F.2d 201 (5th Cir. 1970), affirmed a jury verdict for the defendant in a drowning case. The jury decided that Rabb's failure to wear a lifejacket, which was "required under all circumstances," was the sole proximate cause of his drowning, and this court held that the verdict was supported by a reasonable evidentiary basis. Here again, unlike in the instant case, the injury was caused by a failure to use required equipment.
 
 
 20
 In Little v. Green, 428 F.2d 1061 (5th Cir. 1970), plaintiff was injured while operating a winch when he kicked the cable to correct its override, instead of using the "preferred method" of eliminating the override by tapping the cable lightly with his hand. This court, in affirming a jury verdict for defendant, held that the injury was attributable to plaintiff's intentional negligent act. As in the other cases cited to us by defendants, the plaintiff in Little failed to follow a usual safe procedure and in fact performed his duties in a manner not sanctioned by his superiors. In the instant case, Weeks' diving procedure was consistent with past practice and acceptable to his foreman Arsua.
 
 
 21
 A district court case, Taylor v. SS Helen Lykes, 268 F.Supp. 932 (E.D.La. 1967), aff'd, 402 F.2d 777 (5th Cir. 1968), is likewise essentially different from this case. In Taylor, plaintiff longshoreman was injured when he chose not to use available pallet boards as a platform from which to unload bags of wheat. The district court found that plaintiff's negligence in failing to follow "good stevedoring practice" was the sole cause of his injury.
 
 
 22
 Defendants' second proposition, that the barge was seaworthy because its diving procedures conformed to those regularly used in the Florida Keys, we reject as not controlling. Defendants argue that divers in the Florida Keys traditionally dive without lifelines. In essence, their argument states that an unseaworthy practice becomes seaworthy if ratified by custom and usage. This court has previously rejected such an argument in Stevens v. Seacoast Co., 414 F.2d 1032 (5th Cir. 1969). In Stevens the defendant argued that its radioless oyster dredging vessel was not unseaworthy because vessels of its kind customarily had no radios. Rejecting this reasoning, the court stated that "the law can draw on its own resources to find a need and thus to reject a custom as wanting in due care as this one." 414 F.2d at 1039. The same reasoning is equally applicable in the instant case. Cf. Davis v. Associated Pipe Line Contractors, Inc., 305 F.Supp. 1345 (W.D. La.1968), aff'd, 418 F.2d 920 (5th Cir. 1969).
 
 II. Proximate Cause
 
 23
 The district court found that the plaintiff had failed to prove that the decedent's death had been caused by the alleged unseaworthiness. Defendants suggested at trial that Weeks may have died of a heart attack. In support of this contention, defendants presented medical testimony to the effect that Weeks suffered from interior wall injury and that his heart condition had been diagnosed two years before his death. Additionally, there was a previous diagnosis of angina pectoris eighteen months before decedent's death, and only foam rather than water came out of Weeks' mouth when he was brought to the surface. Without more, this evidence cannot refute the irresistible inference that a man who is beneath the water for fifteen or twenty minutes has died for lack of air. No autopsy having been performed, there was no controlling evidence of whether or not he had water in his lungs. Weeks was in apparent good health when he went below the surface. The fact that he had moved approximately thirty feet from the location of the patch along the bottom of the barge, when he was working no more than ten feet from the side of the barge, readily suggests that prompt rescue efforts would have brought him to the surface alive. A seaworthy vessel would have provided the means of such a prompt rescue. The failure to find that plaintiff had met the required burden of proof as to proximate cause was clearly erroneous.
 
 
 24
 The judgment for the defendants is reversed and the case is remanded for entry of judgment for the plaintiff in such amount as the district court shall determine.
 
 
 25
 Reversed and remanded.
 
 
 
 *
 Hon. Orie L. Phillips, of the Tenth Circuit, sitting by designation