Levi THOMAS, Plaintiff-Appellant,

v.

DIAMOND M DRILLING CO., Defendant-Appellee.

No. 76–3461
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 17, 1978.

Donald L. Mayeux, Eunice, La., for plaintiff-appellant.

Joseph J. Weigand, Jr., Houma, La., for defendant-appellee.

Before BROWN, Chief Judge, RONEY and HILL, Circuit Judges.

JOHN R. BROWN, Chief Judge.

Levi Thomas was injured in March, 1974, while working as a roustabout on an offshore drilling rig owned by the Diamond M Drilling Company. Alleging that his injury resulted from Diamond M's negligence and from the unseaworthy condition of the rig, Thomas brought suit for damages and maintenance and cure.[1] The District Court found that Thomas had sustained a back injury, but held that Diamond M was not negligent, that the rig was seaworthy, and that Thomas's own negligence was the sole proximate cause of his injury. We affirm the District Court.

On March 3, 1974, Thomas, who had been employed on the drilling rig for approxi-

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

1. Jurisdiction was based on the Jones Act, 46 U.S.C. § 688, and diversity of citizenship, 28 U.S.C. § 1332.

mately seven months, was working with a welder, Raymond Delcambre, to repair a mud pump. As part of this job, Thomas had to unscrew and remove the covers of the pump, then replace these caps after the welder completed his portion of the task. Thomas claimed that in lifting a pump cap, which weighed between sixty and one hundred pounds, and in leaning over the pump to screw the cap back into place, he injured his back and has since been unable to work.

■ Plaintiff first contends that the defendant's rig was inadequately equipped and manned for the task of repairing the mud pump and therefore unseaworthy. In ruling on this claim, the District Court made the following findings of fact: the job of removing and replacing mud pump covers is routinely performed without assistance; a pulley and hoist were available to provide mechanical assistance if desired; two other workers were available to provide assistance if asked; and a catwalk running beside the pump provided plaintiff with a platform from which he could have replaced the cap without leaning over the pump.[2] From these findings, the Judge concluded that no unseaworthy condition existed. We determine that the findings of fact are above the Plimsoll line of F.R.Civ.P. 52(a) and that the holding of seaworthiness is not erroneous as a finding of fact or as a conclusion of law.

It is true that, as a matter of legal theory, the District Court might have found Thomas contributorily negligent in failing to ask for either human or mechanical assistance, at the same time have found the vessel inadequately manned, and apportioned damages on the basis of comparative fault. As this Court has stated, "[d]epending upon the particular facts, a seaman may fail to observe proper care for his own safety in failing to seek the help of others aboard ship, once he realizes or should realize that an assigned task is beyond his individual physical capacity. But that does not discharge the vessel from the responsibility of supplying adequate personnel available in the first instance for performance of the task." *Moschi v. Steamship Edgar F. Luckenbach,* 5 Cir., 1970, 424 F.2d 1060, 1061 (per curiam); *American President Lines, Ltd. v. Welch,* 9 Cir., 1967, 377 F.2d 501, 504–505; *see also Manning v. M/V "Sea Road,"* 5 Cir., 1969, 417 F.2d 603. Such facts are not present in this case. In *Moschi,* the District Court found that the lifting job assigned to the plaintiff required two men for safe performance; in *American President Lines,* there was ample and uncontradicted testimony in the record that the task involved was a two-man job. Here, by contrast, there was uncontradicted testimony that removing and replacing the mud pump caps was regarded as a job that could be and was routinely performed by one man. Indeed, plaintiff had performed the task alone on several previous occasions.

That a given practice employed on a vessel is customary does not ensure its status as seaworthy, *e. g., Weeks v. Alonzo Cothron, Inc.,* 5 Cir., 1972, 466 F.2d 578, 581–82; *Aguirre v. Citizens Casualty Company of New York,* 5 Cir., 1971, 441 F.2d 141, 145, but does provide evidence of whether the vessel is reasonably fit for the tasks required of its seamen. In this case, we need not rely solely on the testimony presented as to the usual practice. Defendant urged, and the Trial Court found, that Thomas could have used the catwalk or asked for manual or mechanical assistance, which

2. The record contains conflicting testimony as to whether this catwalk could have been used to avoid leaning over the pump in replacing the cap. Raymond Delcambre and Lee Rodney Bushnell, the welder and roustabout working with Thomas on the rig on March 3, 1974, testified that the catwalk completely surrounded the pump and could have been used as a platform. Tr. at 85, 97, 102–103. Thomas's contradictory testimony was that the walk ran only part of the way around the pumps. Thomas argued that photographs supporting the defendant's witnesses indicated only that the walk had been extended at a later date. Tr. at 15, 33, 43, 111–12, 120–22. The Trial Judge resolved this conflict by assessing the weight and credibility of the testimony presented. We cannot say that his resolution is clearly erroneous.

were both available on request.[3] In *Moschi, American President Lines,* and *Aguirre, supra,* the Court found that no additional personnel were available to give the assistance held necessary for the safe performance of the assigned tasks. Here, by contrast, the additional manpower was there for the asking. Plaintiff's argument is that Diamond M should have *required* a second man to aid Thomas or *required* Thomas to use the pulley or hoist. This argument has been decisive in situations in which shipowners failed to require seamen to use equipment or assistance necessary to make an operation minimally safe, leaving the safety precautions to the option of each seaman. In *Weeks v. Alonzo Cothron, Inc., supra,* for example, the vessel was unseaworthy because the seamen were not required to use *any* safety procedures when diving to make underwater repairs; in *Davis v. Parkhill-Goodloe Co.,* 5 Cir., 1962, 302 F.2d 489, the shipowner was liable for its failure to instruct a completely inexperienced seaman that life jackets must be worn during repair operations which involved traversing narrow walkways over open water. Here, the District Court found that a mud pump cover can usually be safely lifted by one man, and that such aids as the catwalk were easily used. Given these findings, we see no error in the holding that Diamond M fulfilled its duty of providing a seaworthy vessel.

Thomas also challenges the District Court's findings that Diamond M was not negligent and that Thomas's own negligent action in failing to ask for aid or use the catwalk was the sole proximate cause of his injury. These are peculiarly fact findings, see *Rogers v. Gracey-Hellums Corp.,* 5 Cir., 1975, 442 F.2d 1196, that cannot be disturbed unless we find clear error or a manifestly improper legal standard. Thomas rested his claim of negligence on the same theory offered to support the claim of unseaworthiness, and we uphold the District Judge's finding that this evidence was insufficient to prove negligence. Without

any finding of negligence on the part of the defendant, the finding that Thomas's own negligence contributed one hundred percent to his injury becomes irrelevant.

■ Finally, plaintiff contends that he is entitled to receive maintenance and cure payments past December 8, 1975, when the results of a myelogram conducted shortly after the trial revealed "no serious problem" in the condition of his back. The District Court held that on this date, Thomas reached maximum cure, ending Diamond M's obligation to continue payments. We have reviewed the medical evidence presented and find no clear error in this result.

AFFIRMED.

---

**3.** Thomas testified that he was aware of the presence of portable hoist and pulley devices on the rig. Tr. at 19.